ELKIND AND DIMENTO, P.A.
2090 East Route 70
Cherry Hill, N.J. 08003
856.424.7800
GE-7902
Attorney for Defendants Elite Energy, LLC., and Bunh Le

| | |
|---|---|
| ROBERT COX, | : US DISTRICT COURT |
| | : DISTRICT OF NEW JERSEY |
| Plaintiff(s) | : CAMDEN |
| | : <u>ELECTRONICALLY FILED</u> |
| v. | : Docket No. 09-4444 |
| | : CIVIL ACTION |
| | : |
| ELITE ENERGY, LLC and BUNH LE, | : |
| | :CERTIFICATION OF ANTHONY F. |
| | :DIMENTO, ESQUIRE |
| Defendant(s) | : |

I Anthony F. DiMento, Esquire being of full age hereby Certifies:

1.   I am an attorney at law with the law firm of Elkind and DiMento, attorneys for Defendants Elite Energy, LLC., and Bunh Le.

2.   I have been practicing law since 1981 and I have been practicing in the area of Employment Law for the past 15 years, primarily in the Courts of the State of New Jersey.

3.   I was retained on September 15, 2009 by the Defendants.

4.   In the year and a half I have represented the Defendants in this matter, my office has expended a total of 32.9 hours at a rate of $250.00 per hour reflecting a total legal fee including expenses in the amount of $7238.75, independent of filing and expense costs of $1,4026.67, for a total bill of $8641.42.

5.   Arykah Asheley, Esquire is an Associate within my firm and has a billing rate of $150.00 per hour.

6.   In those 32.9 hours, I was able to provide my client with aggressive advocacy and stellar representation.

7.   As a result of my efforts at the Arbitration, I was able to "NO CAUSE" the Plaintiff on damages in the amount of $25,780.00 reflecting alleged unpaid overtime.

8.   In fact, Plaintiff's combined Award for improper deduction and lack of overtime payment merely totaled $1481.13. That amount was doubled allowing for liquidated damages due to my client's deficient record keeping.

9. I was able to try the same case as Plaintiff's counsel and obtain what I considered to be a huge victory for my clients at a third of the hours expended by Plaintiff's counsel.

10.   Attached as **Exhibit 1** is a true and accurate copy of Plaintiff's Complaint dated 8/27/09.

11.   Attached as **Exhibit 2** is a true and accurate copy of the interrogatories propounded by Plaintiff.

12.   Attached as **Exhibit 3** is a true and accurate copy of the Notice for Production of documents propounded by Plaintiff.

13.   Attached as **Exhibit 4** is a true and accurate copy of Plaintiff's Arbitration Memorandum dated December 22, 2010.

14.   Attached as **Exhibit 5** is a true and accurate copy of my bill for services, independent of filing and expense costs, in representing the Defendants in this matter.

15.   I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED:  March 4, 2011                _____
                                     ANTHONY F. DIMENTO, ESQUIRE

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERT COX              :
282 Pavonia Circle       :
Marlton, NJ            :
                   :
         Plaintiff,     :
     v.                  :      CIVIL ACTION
                   :
ELITE ENERGY LLC       :
132 Route 70          :     DOCKET NO.: 09-4444
Medford, NJ 08055-2372   :
                   :
      and              :
                   :     **COMPLAINT AND JURY DEMAND**
BUNH LE              :
c/o Elite Energey LLC    :
132 Route 70          :
Medford, NJ 08055-2372   :
                   :
       Defendants.    :

## CIVIL ACTION COMPLAINT

Robert Cox (hereinafter referred to as "Plaintiff" unless otherwise indicated) hereby complains as follows against Defendants Elite Energy LLC and Bunh Le (hereinafter collectively referred to as "Defendants" unless otherwise indicated).

## INTRODUCTION

1.     Plaintiff has initiated the instant action to redress violations by Defendants of the Fair Labor Standards Act, the New Jersey Wage and Hour Law, and the New Jersey Conscientious Employee Protection Act ("CEPA"). Plaintiff asserts that Defendants failed to pay him at least 1.5 times his hourly rate for hours worked in excess of forty per week. In addition, Plaintiff asserts he was terminated for complaining about not being paid overtime and being paid unlawfully, in violation of the FLSA, the NJ Wage and Hour Law, and CEPA.

## PARTIES

2.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

3.      Plaintiff Robert Cox is an adult *sui juris* individual with an address as set forth above.

4.      Defendant Elite Energy LLC ("Elite") is a New Jersey Corporation which operates a principal place of business at the address indicated in the caption.

5.      Elite operates a Lukoil gas station at the address indicated in the caption.

6.      Defendant Buhn Le ("Le") is the owner of Elite.

7.      At all times relevant herein, Le exercised control over payments issued to Plaintiff.

8.      At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV.      FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.      Plaintiff was hired by Defendants in January of 2008.

11.      Plaintiff was a petroleum distribution engineer.

12.      Plaintiff's primary duty while employed by Defendants was to pump gas for customers.

13.      Plaintiff did not exercise discretion or independent judgment with respect to matters of significance to perform his routine job duties.

14.   Plaintiff did not manage Defendant or a customarily recognized department of Defendant, and he has no supervisory authority over other employees of Defendant.

15.   Plaintiff was regularly scheduled to work, and did regularly work, in excess of forty (40) hours per workweek.

16.   Plaintiff was not paid at least one and one-half times his regular hourly rate of pay for hours worked in excess of forty per workweek.

17.   Instead, Plaintiff was paid unlawfully in cash for any hours he worked in excess of forty hours per week.

18.   Plaintiff's base rate was $8.00 per hour.

19.   For each hour worked in excess of forty per week, Defendants paid Plaintiff $6.00 per hour in cash.

20.   Plaintiff complained about his lack of overtime, his lack of minimum wage payments, and the unlawful cash payments of Defendants shortly before his termination.

21.   Plaintiff was terminated in retaliation for his complaints.

**Count I**
**Fair Labor Standards Act (FLSA)**
**(overtime compensation)**

22.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

23.   At all times relevant herein, Defendants have and continue to be employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

24.   Neither Defendant is a State or local government employer within the meaning of Section 207(o) of the FLSA.

25.     At all times relevant herein, Defendant Li was responsible for paying wages to Plaintiff.

26.     Defendant Li acted directly and/or indirectly in the interest of Defendants in relation to Plaintiff.

27.     At all times relevant herein, Plaintiff was employed with Defendants as an "employee" within the meaning of the FLSA.

28.     Under the FLSA, an employer must pay a non-exempt employee at least one and one half times hid hourly rate for each hour worked in excess of forty per week.

29.     Defendants' violations of the FLSA include, but are not limited to:

    a.     not paying Plaintiff at least 1.5 times his regular hourly rate of pay for all hours worked in excess of forty per workweek;

    b.     not using proper record keeping to ensure that Plaintiff was paid for each and every hour he worked;

    c.     not paying Plaintiff minimum wage for his overtime hours; and

    d.     terminating Plaintiff for complaining of FLSA violations.

## Count II
## Fair Labor Standards Act (FLSA)
### (minimum wage)

30.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31.     At all times relevant herein, the minimum wage was $7.15 per hour.

32.     For hours worked in excess of forty, Defendants only paid Plaintiff $6.00 per hour.

33.   Defendants paid Plaintiff under minimum wage, in violation of the FLSA.

### Count III
### Fair Labor Standards Act (FLSA)
### (Retaliation)

34.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35.   In December of 2008, and January and February of 2009, Plaintiff complained that he was being paid overtime unlawfully.

36.   Specifically, he complained that he was earning less than minimum wage, not being paid time and one-half for overtime, and not being paid all his wages by W2.

37.   Shortly thereafter, Defendants terminated Plaintiff.

38.   Plaintiff was terminated because of his complaints concerning overtime, minimum wage, and legal payment.

39.   Defendant's aforementioned retaliatory conduct violated the FLSA.

### Count IV
### New Jersey Wage and Hour Law
### (overtime compensation, retaliation)

40.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41.   The aforementioned conduct of Defendants violated the New Jersey Wage and Hour Law.

**Count V**
**New Jersey Minimum Wage Law**
**(Minimum Wage, Retaliation)**

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     The aforementioned conduct of Defendants violated the New Jersey Minimum Wage Law.

**Count VI**
**New Jersey Conscientious Employee Protection Act**
**(Retaliation)**

44.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45.     Plaintiff complained that he was not paid all his wages pursuant to tax laws via W2 within days of his termination.

46.     Plaintiff further complained that a substantial amount of his wages was paid unlawfully to him without appropriate deductions, including deductions for unemployment and income tax.

47.     Plaintiff was terminated for complaining about Defendant's unlawful wage policies.

48.     Defendant Li fired Plaintiff.

49.     The aforementioned conduct of Defendants violated CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

Defendants are to be prohibited from continuing to maintain its illegal policy, practice or custom in violation of the FLSA.

Defendants are to be prohibited from continuing to maintain its illegal policy, practice or custom in violation of the New Jersey Wage and Hour Law.

Defendants are to compensate, reimburse, and make Plaintiff whole for any and all pay and benefits they would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld.

Plaintiff is to be awarded liquidated damages pursuant to FLSA and punitive damages pursuant to the New Jersey Wage and Hour Law and CEPA.

Plaintiff is to be accorded damages for his emotional distress and any and all other equitable and legal relief as the Court deems just, proper and appropriate;

Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

Any verdict in favor of Plaintiff and other similarly situated employees is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law.

Respectfully submitted,

KARPF, KARPF & VIRANT

By: _____
Justin Swidler, Esq.
3070 Bristol Pike
Bldg. 2, Ste. 231
Bensalem, PA 19020
(215) 639-0801

Date: August 27, 2009

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT COX | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| ELITE ENERGEY LLC | : | No: 09-444 |
| | : | |
| and | : | |
| | : | |
| BUNH LE | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS

PROPOUNDING PARTY:   Plaintiff

RESPONDING PARTY:   Defendants

SET NUMBER:   One (1)

TO DEFENDANT(S) AND THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rules of Civil Procedure 26(b)(1) and 33, Plaintiff hereby requests that Defendants respond under oath to the following Interrogatories within thirty (30) days of service hereof.

### INSTRUCTIONS

In responding to these Interrogatories, the following instructions shall apply:

1. Each Interrogatory must be answered separately, fully, in writing, and under oath.

2. These Interrogatories are addressed to Defendants, its agents or attorneys, or any of them. These Interrogatories are deemed to be continuing, requiring Defendants to provide verified supplemental answers setting forth any additional information within the scope of these Interrogatories as may be acquired by Defendants, their agents and attorneys. Such supplemental responses shall be served upon the undersigned counsel for Plaintiff within thirty (30) days after receipt of such information, but in no event later than the discovery cut-off date.

3.      In lieu of identifying particular documents or communications, such documents or communications may, at your option, be attached to your answer to those Interrogatories requesting identification of those documents or communications.

4.      A response should be made individually to each Interrogatory.

5.      The full text of the Interrogatory to which the answer is intended to respond is to be restated immediately preceding such answer.

6.      Use of the singular tense shall be deemed to include the plural and vice versa, and use of the masculine pronoun shall be deemed to include both genders.

7.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information which might otherwise be construed to be outside their scope.

8.      If any Interrogatory is not fully answered because of a claim of privilege, state the privilege asserted and the facts allegedly giving rise to the claim of privilege.

9.      If Defendants cannot answer any of these Interrogatories after conducting a reasonable investigation, Defendants should so state and answer to the extent it can, stating what information Defendants cannot provide and stating what efforts Defendants made to obtain the unknown information.

## DEFINITIONS

The following definitions shall apply to these Requests for Information:

A.      Defendants shall mean each Defendant named in the caption of the action and their predecessors and successors, their present or former officers, employees, directors, representatives, agents, attorneys and assigns, and its affiliates, subsidiaries, parent or controlling corporations and their affiliates and subsidiaries, or any entity through which it conducts business, either alone or jointly with others.

B.      **"Defendant," "you," "your"** or **"yours"** shall mean each Defendant named in the caption of the action and shall include their agents, representatives, attorneys, and all persons acting on their behalf.

C.      **"Communicate(d)"** or **"Communication"** means any act or instance of transferring, transmitting, passing, delivering or giving information, in the form of facts, ideas, inquiries, or otherwise, by oral, written, electronic, or any other means.

D.      **"Concerning"** means relating to, referring to, reflecting, describing, evidencing or constituting.

E.      **"Document"** shall include writings of any type, all other data compilations from which information can be obtained, and any other means of preserving thoughts or expression, however produced or reproduced. Designated documents shall mean originals in each instance (or copies thereof if originals are unavailable), regardless of origin or location, which are in the custody or control of the Defendants, or in the custody or control of Defendants' agents, representatives, employees, or counsel, and any copies or reproductions that differ in any respect

from the original, such as copies containing marginal notations or other variations. Designated documents are to be taken as including all attachments, exhibits, enclosures, appendices, and other documents that relate to or refer to such designated documents. The enumeration of various specific items as included within the definition of the word "document" shall not be taken to limit the generality of this word, and the requests herein are directed and intended to obtain all "documents" in the broadest and most comprehensive sense and meaning of this word.

F.   **"Identify"** shall mean:

    a.   when referring to a natural person, to give:

        i.   the person's name;

        ii.   the present or last known home address;

        iii.   the present or last known home telephone number;

        iv.   the present or last known place of employment or job title;

        v.   the present or last known business address; and

        vi.   the present or last known business telephone number.

    b.   when referring to any person other than a natural person, to give the full name and the present or last known address and the principal place of business of the corporation, partnership, proprietorship, association or other organization being identified.

    c.   when referring to documents, to give:

        i.   the type of document;

        ii.   the general subject matter;

        iii.   the date of the document; and

        iv.   the author(s), addressee(s) and recipient(s).

G.   **"Person"** or **"persons"** shall mean individuals, corporations, proprietorships, partnerships, firms, associations, joint ventures, banks, any government or governmental bodies, commissions, boards or agencies, and all other legal entities, and if appropriate or indicated, divisions, subsidiaries or departments of corporations or other entities, and their principals, agents, representatives, officers or employees.

## <u>INTERROGATORIES</u>

## <u>INTERROGATORY NO. 1:</u>

Identify the dates of Plaintiff's employment with Defendants and his last job position/title held with Defendants, and the name of any and all persons who supervised him during his employment during his employment.

**INTERROGATORY NO. 2:**

Identify each and every reason why Plaintiff separated from employment with Defendants.

**INTERROGATORY NO. 3:**

Identify each document that Defendants maintain that tend to show or illustrate Plaintiff's pay rate, the hours he worked during his tenure with Defendants, information concerning all withholdings from his pay (including taxes), and overtime compensation.

**INTERROGATORY NO. 4:**

Identify each and every employee and/or former employee of Defendants who has made a formal or informal complaint (via oral complaint or letter to supervisor / management, complaint to DOL, or lawsuit) at any time within the last seven (7) years regarding wage payment(s) and/or overtime compensation.

**INTERROGATORY NO. 5:**

Identify each and every person who was responsible and/or who participated in paying, calculating or compiling information regarding Plaintiff's wages during the tenure of his employment.

**INTERROGATORY NO. 6:**

Identify the job responsibilities for each and every position Plaintiff held with Defendants.

**INTERROGATORY NO. 7:**

Please provide Plaintiff's pay rate/salary at the time of his separation, and any and all benefits he was eligible for and/or receiving, and what bonuses he was eligible for and when they were to be awarded.

**INTERROGATORY NO. 8:**

From January 2008 through the present, identify all hours worked per week by Plaintiff, including the amounts paid and rates of pay made to Plaintiff in wages.

**INTERROGATORY NO. 9:**

Identify any and all communication, e-mails and all other correspondence between Plaintiff and any agent of Defendants and/or between agents of Defendants regarding Plaintiff, in particular those relating to Plaintiff's overtime pay and/or unpaid wages, including the individuals involved in such communications, the dates of such communications, and the substance of such communications.

**INTERROGATORY NO. 10:**

Identify any and all communications between Plaintiff and Defendants and/or any agent(s) of Defendants regarding any complaint(s) concerning overtime pay and/or unpaid wages, including the individuals involved in such communications, the dates of such communications, and the substance of such communications.

**INTERROGATORY NO. 11:**

Identify whether Defendants engaged in an investigation regarding Plaintiff's complaint(s) and/or any discussions relating to Plaintiff's complaints regarding nonpayment of wages or overtime, including but not limited to, the names of the individual(s) who conducted the investigation, the date(s) on which the investigation occurred, the results of the investigation and any and all conversation between any agents of Defendants regarding the investigation.

**INTERROGATORY NO. 12:**

Identify each and every person who is/was responsible for compiling payroll information for Defendants from January 2008 through present.

**INTERROGATORY NO. 13:**

Identify any and all systems employed by Defendants to track the hours worked of hourly employees.

**INTERROGATORY NO. 14:**

Identify each and every person who answered and/or assisted in answering these Interrogatories (excluding counsel).

KARPF, KARPF & VIRANT, P.C.

*/s/ Justin L. Swidler*
Justin L. Swidler

Dated: December 4, 2009

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT COX                           :
                                     :
            Plaintiff,               :
                                     :        CIVIL ACTION
      v.                             :
                                     :        No: 09-444
ELITE ENERGEY LLC                    :
                                     :
            and                      :
                                     :
BUNH LE                              :
                                     :
            Defendants.              :
                                     :

## CERTIFICATE OF SERVICE

I certify, on the date set forth below, that I served Defendants with Plaintiff's First Set of

Interrogatories at the following address via first-class mail:

Gary Neil Elkind
Elkind & Dimento, PA
2090 East Route 70
Cherry Hill, NJ 08003


/s/ James T. Lagan III
James T. Lagan III
*Paralegal*

Dated: December 5, 2009

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ROBERT COX                              :
                                        :
            Plaintiff,                  :
    v.                                  :        CIVIL ACTION
                                        :
ELITE ENERGEY LLC                       :        No: 09-444
                                        :
        and                             :
                                        :
BUNH LE                                 :
                                        :
            Defendants.                 :
                                        :

**PLAINTIFF'S FIRST REQUEST**
**FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

PROPOUNDING PARTY:    Plaintiff

RESPONDING PARTY:     Defendants

SET NUMBER:           One (1)

TO DEFENDANT(S) AND ITS ATTORNEY(S) OF RECORD:

     Pursuant to Federal Rules of Civil Procedure 26(b)(1) and 34, Plaintiff hereby requests that Defendants respond in writing, under oath, to the following Requests for Production of Documents within 30 days of service of their request, and produce and permit inspection and copying of the documents described below. In lieu of producing the documents for inspection, Defendants may forward legible copies of them to Plaintiff's counsel on or before the date on which production is due.

**DEFINITIONS AND INSTRUCTIONS**

     The following definitions and instructions are incorporated by reference whenever applicable in the document.

     1.    The terms "you," "your," "Defendants", or "Defendant," as used herein, shall mean each Defendant named in the caption of the action, their servants, agents, employees, representatives, divisions, managers, accountants, and attorneys, and anyone else acting on behalf of any Defendant.

2.      The term "person," or "persons," as used herein, shall include any natural person, partnership, firm, corporation, trust, association, joint venture, public entity, business organization, or other legal entity.

3.      The term "Plaintiff" as used herein, shall mean the Plaintiff listed in the caption of the instant action.

4.      The term "document," or "documents," as used herein, shall mean the original, or a copy of any kind, of any written, typewritten, printed, or recorded material whatsoever, whether maintained on paper hard copies or on an electronic or other storage medium.  The term includes, but is not limited to, files, records, reports, logs, notes, journals, memoranda, letters, facsimiles (including cover sheets and transmission confirmation sheets therefore), diaries, calendars, articles, telegrams or other correspondence, voice mail (whether transcribed or not), electronic mail (whether printed out or not, and including electronic mail stored or maintained off Defendants' premises, such as with an internet service or e-mail provider), worksheets, recordings, studies, analyses, opinions, books, reports, transcriptions of recordings, lists, information retrievable from computers or media designed for use thereon, pictures, drawings, diagrams, schematics, maps, photographs (whether stored digitally or on hard copies) or other graphic representations, and any other physical means of communication, including audio or video tape recordings, Digital Audio Tape recordings, digital recordings, recordings preserved on recordable compact disc and magnetic tape, computer discs, or computer tape.  The term specifically includes any drafts, whether or not used, of the foregoing, and any altered or annotated copies of the foregoing.  It also includes any copies of originals, or duplicate documents, with notes, markings, or interlineations varying to any degree whatsoever from other existing copies.  Such documents are deemed to be separate documents and are to be produced along with non-interlineated copies.  In the case of all recordings or information not stored in hard copy form, the originals shall be maintained for review in all cases.

5.      The term "Complaint," as used herein, shall mean the Complaint for Damages on file in their action or any Amended Complaint.

6.      The term "personnel file," as used herein, shall include any and all records maintained either in the normal course of business or for any special purpose with respect to the application, course of employment, and termination of any employee of any named Defendant, and specifically includes applications, disciplinary notices, performance evaluations, employment histories or summaries, records of residential addresses and telephone numbers, termination notices, job assignment or classification records, compensation and other similar records. For purposes of the request, the term "personnel record" need not include records of medical benefits, condition, or claims; designations of, or changes in, beneficiary; garnishments; income tax records; or insurance benefits, except as pertaining to the records of the Plaintiffs (in which case such records are to be included).

7.      Please bates-stamp all documents produced.

8.      If any document is withheld under a claim of privilege or other protection, please produce a privilege log and provide all the following information with respect to any such document, so as to aid the Court and the parties hereto in determining the validity of the claim of privilege or other protection:

    (a)   The identity of the person(s) who prepared the document and who signed the document, and over whose name it was sent or issued;

    (b)   The identity of the person(s) to whom the document was directed;

    (c)   The nature and substance of the document, with sufficient particularity to enable the Court and the parties thereto to identify the document;

    (d)   The date of the document;

    (e)   The identity of the person(s) who has (have) custody of, or control over, the document and each copy thereof;

    (f)   The identity of each person to whom a copy of the document was furnished;

    (g)   The number of pages of the document;

    (h)   The basis on which any privilege or other protection is claimed;

    (i)   Whether any non-privileged or non-protected matter is included in the document.

9.      In the event additional documents or other materials come to Defendants attention after the date on which it answers the instant request, Defendants are reminded of their duty to supplement its response to the request if it learns that in some material respect its response or the information disclosed therein is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing. *See* Fed.R.Civ.P. 26(e)(1) and (2).

## DOCUMENTS TO BE PRODUCED

The following documents are requested:

## DOCUMENT REQUEST NO. 1:

Any and all documents which support, evidence, relate or otherwise pertain to any and all personnel policies, pay, or employment policies and/or procedures of Defendants in effect in the last five (5) years, including but not limited to:

(a) Employee discipline policies, including but not limited to, counseling, written warnings, suspension, demotion, and termination policies;

(b) Anti-discrimination policies;

(c) Internal complaint or grievance procedures;

(d) Equal Employment Opportunity (EEO) policies;

(e) All policies related to overtime and/or the Fair Labor Standard Act and/or state laws regarding overtime and/or minimum wage; and

(f) Copies of any and all posters that were posted by Defendants during Plaintiff's tenure with Defendants regarding wage and collection claims and/or overtime pay.

## DOCUMENT REQUEST NO. 2:

Any and all documents relating to the employment of Plaintiff, including documents evidencing, discussing, or related to any of the following:

(a) any and all pay information for Plaintiff for his entire period of employment with Defendants;

(b) any reduction(s) or increase(s) in Plaintiff's pay or benefits;

(c) any changes in Plaintiff's working conditions;

(d) any timecards or time stubs kept or maintained for Plaintiff during his tenure with Defendant.

(e) any documents showing, evidencing, or illustrating where Plaintiff worked within and the timeframes for their employment; and

(f) any and all work/employment schedules for Plaintiff retained by Defendants.

## DOCUMENT REQUEST NO. 3:

Any and all documents which support, evidence, relate to, discuss, memorialize, or otherwise reflect the hours Plaintiff worked during his employment with Defendants, the amount of his pay, his work schedules, if and when he was paid overtime, and any other information related to Plaintiff's pay.

**DOCUMENT REQUEST NO. 4:**

  The complete personnel file of Plaintiff, including but not limited to, any documents, records, letters, memoranda, notes, or computer printouts which were part of Plaintiff's personnel file at any time but were removed for any reason.

  NOTE: If more than one separate file is maintained on Plaintiff, or if files are maintained in more than one location (such as at a branch office and a company headquarters building or other similar facility) the Request is to be interpreted to encompass *all such files*, and your answer thereto should indicate the fact that more than one file exists, identifying each file by its name or internal designation as well as its original location.

**DOCUMENT REQUEST NO. 5:**

  Any and all documents not included in Plaintiff's personnel file(s) which support, evidence, relate or otherwise pertain to Plaintiff's employment with Defendants, including, but not limited to, documents relating to or reflecting job performance, awards to Plaintiff, compensation of Plaintiff, benefits available to Plaintiff, or discipline of Plaintiff.

**DOCUMENT REQUEST NO. 6:**

  Any and all employee handbooks, manuals, procedural guides, or other documents Defendant gave to Plaintiff during Plaintiff's employment with Defendants (including any acknowledgments that Plaintiff is alleged to have signed).

**DOCUMENT REQUEST NO. 7:**

  Any and all documents that Defendants maintain relating to Plaintiff's income withholdings, including but not limited to, unemployment compensation, worker's compensation, and all federal and state taxes during tenure of Plaintiff's employment.

**DOCUMENT REQUEST NO. 8:**

  Any and all correspondence sent to Plaintiff by Defendants or any agent of Defendants in the last five (5) years.

**DOCUMENT REQUEST NO. 9:**

  Any and all documents which support or evidence compensation paid to Plaintiff since the inception of Plaintiff's employment with any Defendants, including but not limited to: wages, salary, bonuses, commissions, profit sharing, stock options, insurance (including medical, dental, life, health and disability insurance), 401K plans, or other compensation and benefits of whatever kind or description paid or granted to Plaintiff by Defendants.

**DOCUMENT REQUEST NO. 10:**

Any and all documents describing the duties Plaintiff was to perform at any time during Plaintiff's employment with Defendants, including but not limited to position descriptions, memoranda, and correspondence outlining such duties.

**DOCUMENT REQUEST NO. 11:**

Any and all documents that in any way show, illustrate, or evidence payroll records and hours worked for people/employees that worked in the same position as Plaintiff and who worked at the same location(s) as Plaintiff (during tenure of Plaintiffs employment).[1]

**DOCUMENT REQUEST NO. 12:**

Any and all notes, memoranda, email communications, or other documents that in any way discuss, mention, reference, or concern Plaintiff and/or his employment within the last two (2) years of his employment.

**DOCUMENT REQUEST NO. 13:**

Any documents in the possession of Defendants that are relevant to the instant action but not covered by the previous requests or that Defendants may introduce at trial, including but not limited to any documents Defendants intends to use as an exhibit in a deposition or at trial.

**DOCUMENT REQUEST NO. 14:**

Please produce any and all letters, memoranda, and other written communications between Defendants (or counsel for Defendants) and any expert witness who will be called at time of trial.

**DOCUMENT REQUEST NO. 15:**

Please produce all documents relating to or supporting Defendants denial of any allegation in Plaintiff's complaint, and relating to or supporting each affirmative or general defense asserted by Defendants.

**DOCUMENT REQUEST NO. 16:**

Please provide any and all documents which support, evidence, relate, or otherwise pertain to promotions six months prior to and after Plaintiff's termination.

---

[1] Comparator evidence will be used by Plaintiff to demonstrate that Defendant's failure to pay overtime was willful.

**DOCUMENT REQUEST NO. 17:**

Please produce any and all documents that were identified in Defendants' Response to Plaintiff's First Set of Interrogatories.

**DOCUMENT REQUEST NO. 18:**

Please produce any documents that are relevant to the instant action but not covered by the previous requests.

**DOCUMENT REQUEST NO. 19:**

Please produce any documents reflecting the jobs for which Plaintiff applied for at anytime.

**DOCUMENT REQUEST NO. 20:**

Please produce any documents related to Plaintiff's application for employment with Defendants.

**DOCUMENT REQUEST NO. 21:**

Please produce a job description for each position that Plaintiff held and/or applied for with Defendants.

**DOCUMENT REQUEST NO. 22:**

Please produce any and all videos, dvds, photographs, sounds, or other recordings which Defendants maintain depict Plaintiff during hours which Plaintiff was "on the clock" while employed with Defendants.


                                        **KARPF, KARPF & VIRANT, P.C.**


                                        */s/ Justin L. Swidler*
                                        Justin L. Swidler


Dated: December 4, 2009

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

ROBERT COX                                    :
                                              :
            Plaintiff,                        :
      v.                                      :          CIVIL ACTION
                                              :
ELITE ENERGEY LLC                             :          No: 09-444
                                              :
            and                               :
                                              :
BUNH LE                                       :
                                              :
            Defendants.                       :
                                              :

## CERTIFICATE OF SERVICE

I certify, on the date set forth below, that I served Defendant with Plaintiff's First

Request for Production of Documents at the following address via first-class mail:

Gary Neil Elkind
Elkind & Dimento, PA
2090 East Route 70
Cherry Hill, NJ 08003


/s/ James T. Lagan III
James T. Lagan III
*Paralegal*

Dated: December 5, 2009

# EXHIBIT 4

| ROBERT COX | CIVIL ACTION NO: 09-444 |
| Plaintiff, | |
| v. | PLAINTIFF'S ARBITRATION STATEMENT |
| ELITE ENERGY, LLC, *et al.* | |
| Defendants. | |

Mr. Robert Cox makes two distinct claims in his Complaint. First, he asserts that he is owed wages from Defendants. Second, he asserts that he was fired unlawfully after he complained of overtime violations. Mr. Cox herein gives notice that he will not proceed on his retaliation claims and will seek damages only relating to his claims for unpaid overtime and unlawful deductions.

**I.  The Fair Labor Standards Act and the New Jersey Wage and Hour Law require employers to pay at least 1.5 times an employee's base rate and prohibit employers from making deductions for shortages**

Under the Fair Labor Standards Act and the New Jersey Wage and Hour Law, Defendants were required to pay Plaintiff 1.5 times his hourly rate for each hour he worked overtime. 29 U.S.C. § 207, N.J. Stat §34:11-56. Further, pursuant to state and federal law, an employer may not deduct amounts for "shortages." N.J. Stat §34:11-4.4; 29 U.S.C.A. § 201 *et seq.*

**A.  Liquidated Damages**

The FLSA requires an employer who violates the law to pay liquidated damages in an equal amount to the lost wages. 29 USC § 216(b). To defeat such a claim for liquidated damages, the employer demonstrates to the satisfaction of the court that the act or omission giving rise to such action was in good faith and the employer had reasonable grounds for believing that his act or omission was not a violation of the law, the court *may,* in its sound

1

discretion, award no liquidated damages or award a smaller amount of liquidated damages. 29 USC § 260. "**A defendant employer's burden of proof is a difficult one to meet. Double damages are the norm, single damages the exception**." *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908 (3d Cir.1991).

Thus, an employer only escapes liability for liquidated damages if it shows its actions were (1) in good faith, (2) it had reasonable grounds for believing its act or omission was not a violation; and (3) the district court finds liquidated damages unwarranted. *Brock v. Claridge Hotel & Casino,* 846 F.2d 180, 187 (3d Cir. 1988). If the employer fails to carry its burden of demonstrating good faith and reasonable grounds, the award of liquidated damages is mandatory. *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1299 (3d Cir. 1991).

Good faith is a subjective requirement, established by showing that the employer had an honest intention to ascertain and follow the dictates of the law; reasonableness is an objective test and cannot be satisfied by mere ignorance of the law's requirements. *Brock,* 846 F.2d at 187.

In *Brock,* the Circuit Court noted that where an employer does not intend for accurate timekeeping measures to operate, or was negligent in assuring their operation, an employer could not have a reasonable basis for believing itself in compliance with the law and thus would not avoid the imposition of liquidated damages. *Id.* In *Martin,* the 3rd Circuit held that characterizing employees as independent contractors paid on a commission basis was not in good faith and the employer lacked reasonable grounds to believe himself in compliance. *Martin,* 949 F.2d at 1299.

In *Layden v. HSL Builders,* the court held that where a manager was responsible for but failed to ensure that his compensation policies were compliant with the law, the court was precluded from determining that this oversight was reasonable. *Layden v. HSL Builders, Inc.,* 2002 U.S. Dist. LEXIS 11634 (E.D. Pa. June 26, 2002). The court reasoned that the employer's

2

failure to take any affirmative steps to comply with the law was not reasonable and therefore required the imposition of liquidated damages. *Id.*

In the instant matter, each of the principals of Elite Energy testified that they understood the law and therefore required that employees work forty hours or less so as not to accrue overtime. During her deposition, Ms. Le testified that one of her duties was to ensure that employees did not work over forty hours, and in fact had never done so.  Deposition of Julie Le at 10.

Mr. Ngo, who testified that he was responsible for preparing and forwarding Elite Energy's payroll information to the corporate accountant, also testified that full-time employees never worked more than 40 hours a week. *See* Deposition of Bach Ngo at 15.

However, as demonstrated below, Elite Energy's own timesheets demonstrate that Cox worked more than forty hours during at least 10 workweeks, with the amount of additional time worked ranging from 15 minutes to 11 hours. *See infra; see also* Timesheets, *attached hereto as* Exhibit D. Time Clock, *attached hereto* as Exhibit F. Mr. Ngo testified that Ms. Le would call him every day and tell him the start time and end times of Elite Energy's employees.

Without even weighing the credibility of Defendant's testimony and documentary evidence, taken at face value, Ms. Le and Mr. Ngo's repeated avowal that they understood the law and therefore required employees to work forty hours a week or less is contradicted by their own records showing Cox routinely working more than forty hours a week. This routine non-payment of overtime in the context of, at least according to Ms. Le and Mr. Ngo, meticulous and daily recordkeeping necessarily precludes a finding of either good faith or objective reasonableness and requires the imposition of liquidated damages. *See Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988).

Needless to say, a determination that Defendants' actively doctored their wage and hour records to deny Cox overtime would conclusively establish that Defendants' had acted *per se* unreasonably and in bad faith and would require the imposition of liquidated damages. *See id.*

### B. Individual Liability

Mr. Cox is suing both his employer and his supervisor, Bihn Le, who is also a minority holder in the business. The case law permits an employee to sue corporate officers for violations of wage payment laws.   *Dole v. Haulaway Inc.*, 723 F.Supp. 274, 286 (D.N.J.1989), *aff'd*, 914 F.2d 242 (3d Cir.1990), *cert. denied*, 499 U.S. 936, 111 S. Ct. 1388, 113 L. Ed. 2d 445 (1991) ("A corporate officer with operational control is an 'employer,' along with the corporation, jointly and severally liable under the [FLSA] for unpaid wages. Further, any such corporate officer is liable in his individual, not representative capacity.").

### II. <u>Damages which can be proven through Plaintiff's testimony</u>

An employee is not required to provide precise and exact information regarding his hours in an overtime case where the employer's records are inadequate.  The Third Court of Appeals has held, regarding this situation:

> In such a situation where the employer's records are inadequate, we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. <u>**If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.**</u>

*Martin v. Selker Bros., Inc.* 949 F.2d 1286 (3d Cir.  1991) *quoting Anderson v. Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946) (emphasis added).

4

## A. Mr. Cox testified that he is owed significant overtime wages.

Mr. Cox's testimony establishes that he worked and was owed a significant amount of overtime wages. Mr. Cox testified in his deposition, and it is further established through his pay records, that he was paid $8.50 per hour. Deposition of Robert Cox at 11, attached as Exhibit H. According to Mr. Cox, Defendants paid him $6 per hour in cash for every hour he worked in excess of forty per workweek. Defendants claim he was never paid anything at all because they claim he never worked overtime.

Mr. Cox testified that when he began working for Defendants, his schedule was 6 AM to 6 PM, twelve hours per day, seven days per week, for a total of 84 hours per week. Exhibit H at 16. He testified that this schedule persisted for approximately four months, at which point he requested a change in schedule to twelve hours a day, six days a week, or 72 hours per week. *Id.* Mr. Cox kept this schedule until the last month or two of his employment, at which point his hours were reduced to ten hours a day, six days a week, or 60 hours per week.

In short, Mr. Cox testified to working three different schedules during the course of his employment with Defendants: 84 hour weeks for approximately four months, 72 hour weeks for approximately seven months, and 60 hour weeks for approximately two months. For the first period, Mr. Cox avers that he was paid $264 a week for his overtime hours (44 hours at $6 per hour) but should have been paid $561 (44 hours at $12.75 per hour). Thus, for this first period of four months, Mr. Cox was denied overtime wages in the amount of $5,227.

In the second period, Mr. Cox avers that he was paid $192 a week for his overtime hours (32 hours at $6 per hour) but should have been paid $408 (32 hours at $12.75 per hour). For this second period of seven months, Mr. Cox was therefore denied overtime wages in the amount of $6,502.

For the final period, Mr. Cox avers that he was paid $120 a week for his overtime hours worked (20 hours at $6 per hour) but should have been paid $255 (20 hours at $12.75 per hour). For this final period of two months, Mr. Cox was denied overtime wages in the amount of $1,161. Throughout the course of his employment by Defendants, Mr. Cox was denied overtime wages of $12,889. Including liquidated damages, Mr. Cox's testimony establishes that he is owed $25,779.

### B. Defendants' records and testimony are not credible because they are full of contradictions and irregularities.

As an initial matter, Defendants utterly fail to provide adequate documentation of the actual time Mr. Cox worked. Though Defendants have produced various and contradicting documents purporting to show Mr. Cox's hours, Mr. Le, Ms. Le, and Mr. Ngo all testified that Mr. Cox's hours were tracked by use of a time clock and that this time clock and the records from this clock were lost as a result of a robbery in December 2009 in which the clock and connected computer were stolen.

On the day of Mr. Le's deposition, he produced the only time clock documents which were produced in this case. *See* Time Clock Records, *attached hereto* as Exhibit F. The time period which is covered for this period is January 23 to February 1 and April 28 to May 8. *Id.* There is no explanation as to why these documents were maintained and others were not. Even in this relatively short time, the difference in hours worked according to the time clock records and hours worked according to the "time sheet" records are substantial. Specifically, the "time sheet" records, which Defendants maintain prove that Mr. Cox failed to work overtime, short Mr. Cox from 29.72 hours of overtime when compared to the Time Clock records. *See* Difference Between "Timesheet" and "Time Clock" *attached hereto* as "Exhibit G." Further, with the exception of a single day (on May 1, where the difference is .22 hours), every single day which

records exist for the both Time Clock and the Timesheet, Defendants have understated Mr. Cox's actual working hours, including on two days where the Timesheet claims Mr. Cox did not work when the Time Clock proves he had. *Id.*

In lieu of these alleged stolen time-clock records for the remaining period of Mr. Cox's employment, Defendants have produced three sets of documents purporting to evidence the hours Mr. Cox worked. The first is a series of paystubs for Mr. Cox which includes an hour figure of 80 hours per pay period (with the exception of 3 periods where the documents purport that he worked 60, 61, and 67). *See* Paystubs, *attached hereto as* Exhibit C. The second is a set of handwritten spreadsheets that that show Mr. Cox worked 80 hours per pay period (for all payperiods). *See* Payroll Spreadsheet, *attached hereto as* Exhibit B. These documents are inadequate in that they do not a) evidence the time Mr. Cox started and stopped work; b) show the hours Mr. Cox was purported to work per week. *See, e.g.,* Exhibit C, Exhibit D. Furthermore, the documents are internally inconsistent for several weeks, including the payperiods of June 23-July 6 (where Exhibit B shows 20 more hours than Exhibit C), April 26-May 9 (where Exhibit B shows 13 more hours than Exhibit C), and June 7-June 20 (where Exhibit B shows 19 more hours than Exhibit C).

Defendant's third set of produced documents is an Hours Spreadsheet. *See* Exhibit D. This document purports to show the start and stop times for Mr. Cox. However, this document is inadequate to establish the hours Mr. Cox worked because: (a) it suffers from a number of internal irregularities; (b) it was produced by Mr. Ngo off-site, where he had no opportunity to observe Mr. Cox's actual start and stop time; (c) Mr. Ngo testified during his deposition it was not an accurate report of Mr. Cox's hours; and( d) it contradicts all other documents produced by Defendants. Furthermore, serious questions were raised about the authenticity and credibility of

this record during Mr. Ngo and Ms. Le's depositions.

After first testifying that he was only an investor and did not handle any personnel matters at Elite Energy, Mr. Ngo then changed his testimony and claimed that he did some work regarding the payment of employees. *See* Deposition of Bach Ngo, at 7-8. He then said that Ms. Le would call him either every day, *id.* at 8, or every couple days, *id.*, and tell him how many hours each employee worked each day. *Id.* at 8. Mr. Ngo testified that he would then enter the start times and stop times of each employee into the spreadsheet and send this to his accountant every two weeks. *Id.* at 13-14. He further testified that he created a new document in Excel each 2 week payperiod. *Id.* at 24. Nevertheless, he maintained that Exhibit D – the only document produced in discovery by Defendant which allegedly shows start and stop times for all the weeks Mr. Cox was employed – was the spreadsheet. This is clearly contradictory; as the spreadsheet consists of every payperiod Mr. Cox was employed.

Furthermore, Mr. Ngo testified that Elite Energy was only open to 10pm during Mr. Cox's employment. He maintained this even after he was specifically asked whether the station was open to 12am. *Id.* at 15-16. It is inconceivable that he would not know the operating hours of the station (and very spreadsheet he claims to have produced shows Mr. Cox working until after 11pm right through his termination). Furthermore, it must be assumed if Mr. Ngo is not lying, Mr. Ngo must have written other spreadsheets for other employees who presumably would have had to work until closing time. His lack of knowledge regarding this further proves the documents' bogus nature.

Mr. Ngo further testified that he ceased maintaining this spreadsheet shortly before the burglary in December 2009 in which Defendants lost the time clock and work computer. *Id.* at 13. He testified that his home computer, on which he maintained this spreadsheet, ceased

8

working due to a storm prior to the robbery. *Id.* at 10,  Defendants did not produce the spreadsheet until early 2010, after Plaintiff's request for documents which were sent on December 4, 2009.  Neither Mr. Ngo nor Ms. Le could provide any coherent explanation as to why Ms. Le started calling her father off-site to enter employee start and stop times into a home computer when there was a computer in the workplace already connected to a digital time clock, nor why Mr. Ngo and Ms. Le decided to stop this practice in the middle of this litigation.

The spreadsheet itself contains a number of irregularities. Mr. Ngo testified that the spreadsheet he created contained only two weeks at a time, and that every pay period he would create a new file. *Id.* at 24. However, the document produced is not broken up by pay period at all, but lists every day Mr. Cox was purported to have ever worked.

Furthermore, the spreadsheet shows Mr. Cox working 8.03 hours on February 30 and 8.16 hours on April 31.[1] *See Exhibit D.* The spreadsheet is also inconsistent with Mr. Ngo's testimony that no employee ever worked more than 40 hours per week, since the spreadsheet itself shows Mr. Cox working more than 40 hours per week on a regular basis, and on a number of occasions, significantly more than 40 hours per week. Mr. Ngo had no explanation for the inconsistency in his testimony and the document he claimed to have produced other than to note that he had a heart condition and he might have made mistakes. Deposition of Ngo at 62.

Faced with these inconsistencies, contradictions, irregularities, and open questions, Mr. Ngo admitted that the hours spreadsheet was not an accurate record of the hours Mr. Cox worked. *Id.* at 62-63.  **He further admitted that Defendants do not have an "accurate record as to the hours Mr. Cox worked while he worked for Elite Energy."** *Id.* at 62.   Sir Arbitrator

---

[1] Undersigned counsel respectfully suggests that Defendants placing 31 days in February and 31 days in April is a result of Defendants creating the document all at once, after the litigation ensued.  In quickly putting together times for an entire year of employment, Defendants apparently forgot that February was only 29 days (2008 was a leap year) and April only 30.

should take him at his word, and accept that Defendants' records are utterly insufficient to either establish Mr. Cox's hours or rebut Mr. Cox's own testimony.

### III. Damages which can be proven by Defendants' own records and testimony

Even if Sir Arbitrator finds Defendants' testimony more credible than Plaintiff's, Defendants' own documents and testimony establish liability (albeit less) on the part of Defendants and Plaintiff is still entitled to judgment against Defendants.

#### A. Defendants admit to deducting certain amounts from Mr. Cox's wages which are *per se* unlawful pursuant to state and federal law.

Pursuant to the New Jersey Wage and Hour Law, an employer may not deduct from wages any amount for shortages or breakages. N.J. Stat §34:11-4.4 prevents employers from withholding any amount(s) from a paycheck unless it meets one of the eleven exceptions to this Rule. Importantly, shortages and breakages are not permissible bases to withhold wages, and withholding for any shortage is a violation of the law. *See Mule v. Acme-Markets, Inc.*, 110 N.J. Super 9 (App. Div. 1970). *See also Frequently Asked Questions, Payroll Deductions*, NJ D.O.L. (http://lwd.state.nj.us/labor/wagehour/content/wage_and_hour_compliance_faqs.html), which states:

> Q. Are employers allowed to deduct for shortages or breakage?
> A. **No.** Nothing can be deducted from an employee's wages other than those items required and/or specifically permitted by federal law and/or state law.

*Id.*

Here, Defendants *admit* to conduct which is in violation of the law. Defendants' pay records indicate that for the pay period of June 23, 2008-July 6, 2008, Mr. Cox was paid only $510 even though, according to Defendant's own payroll records, Mr. Cox worked 80 hours (at $8.50 per hour). He accordingly should have paid $680. Julie Le, who at all times relevant herein was Plaintiff's director supervisor, testified that the reason for this discrepancy was

because of such a deduction.  Specifically Ms. Le testifies as follows:

> Q: So if a gas attendant is short during their shift, they are required to make up the difference?
> A: Yes.
> Q: Does it make a difference – is there an investigation done prior to withholding the amount to make sure the gas attendant actually stole the money?
> A: I don't know.
> Q: Is the reason they are – well, let me ask you this.  When the money is short, is there an assumption that the gas attendant stole the money?
> A: Absolutely not.
> Q: So is the assumption that the gas attendant made the error?
> A: Yes.
> Q: Even if the gas attendant made an error, they still have money withheld from their check?
> A: They are aware of this before they started.
> ....
> Q: And the gas attendant has to pay for [the shortage] even if they don't admit that they have stolen the money?
> A: Yes.
> Q: And that happened to Robert Cox on a few occasions; correct?
> A: Correct.
> Q: And one of those occasions appears to be the week of 7/6/08?
> A: Yes.
> Q: Well, 6/23-7/3?
> A: Yes.

Deposition of Julie Le at 42-43 (attached hereto as Exhibit A).

Such deductions further occurred for the weeks of 6/9-6/22 and 4/26-5/9.  For the payperiods of 6/9-6/22 and 4/26-5/9, according to Defendant's own payroll documents, Mr. Cox worked 80 hours.[2]  Nevertheless, Mr. Cox was shorted from his pay each week, receiving only $518.50 for the weeks of 6/9-6/22 (Defendants unlawfully withheld $161.50) and $569.50 for the weeks of 4/26-5/9 (Defendants unlawfully withheld $110.50).[3]  The total of these deductions is: $442.

---

[2] Mr. Cox contends that he worked in excess of 80 hours.  However, as Defendant admits to the unlawful deductions, it is not necessary in this section to discuss Mr. Cox's claims regarding his hours.  Assuming everything Defendant is claiming is accurate, Mr. Cox is *still* owed money for these weeks.

[3] It is further important to note that even though these withholdings are allegedly for shortages, Defendants miraculously were always able to deduct the amount owed by subtracting a perfectly even number from his hours. Accordingly, if Defendants are to be believed, Mr. Cox was always short a number perfectly divisible by $8.50.  The undersigned respectfully suggests that such a contention is statistically impossible and not credible.

**B. Defendants' own documents show that Mr. Cox worked 81.5 hours overtime and was never paid for it.**

It is further important to note that even though Mr. Cox disputes that the authenticity and accuracy of Defendants; documents, even if such documents were accurate; Defendants *still* owe Mr. Cox for overtime compensation.[4]  Assuming such documents provided were accurate, Mr. Cox worked overtime on the following weeks:

A. For the payperiod of January 23-February 1, Defendants failed to pay Mr. Cox for 14.23 hours according to the actual Time Clock document (when compared the Time Sheet Spreadsheet). As the Time Sheet shows him working 40 hours/week, this additional time is all overtime and should be paid as overtime.  Exhibits F, D.

B. For the payperiod of April 26 through May 11, Defendants failed to pay Mr. Cox for 15.48 hours according to the actual Time Clock document (when compared the Time Sheet Spreadsheet). As the Time Sheet shows him working 40 hours/week, this additional time is all overtime and should be paid as overtime.  *Id.*

C. The week of February 9 to February 15, Mr. Cox worked 2.02 hours overtime and was not paid any overtime. *See* Calculation Sheet, *attached hereto* as "Exhibit B," Paycheck for payperiod 2/2-2/15 (reflecting no overtime), *attached hereto* as "Exhibit C," and Timesheets, *attached hereto* as "Exhibit D."

D. The week of February 16 to February 22, Mr. Cox worked 1.22 hours overtime and was not paid any overtime. *See Id.*

E. The week of March 10 through March 16, Mr. Cox worked 1.08 hours overtime and was not paid any overtime. *See Id.*

F. The week of August 4 to August 10, Mr. Cox worked 2.15 hours overtime and was not paid any overtime. *See Id.*

G. The week of August 11 to August 17, Mr. Cox worked 3.02 hours overtime and was not paid any overtime.  *See Id.*

H. The week of September 15 to September 21, Mr. Cox worked 11.8 hours overtime and was not paid any overtime.  *See Id.*

I. The week of November 3 to November 9, Mr. Cox worked 6.11 hours overtime and was not paid any overtime.

---

[4] Indeed, Mr. Ngo, the majority owner of Defendants, conceded during his deposition that Mr. Cox was owed at least some overtime compensation of which he was never paid.  Deposition of Ngo at 62.

J.   The week of November 24 to November 30, Mr. Cox worked 7.9 hours overtime and was not paid any overtime.

K.   The week of December 22 through December 28, Mr. Cox worked 11.9 hours overtime and was not paid any overtime.

L.   Further, during the weeks of January 5, January 12, January 20, February 6, March 2, April 28, May 20, June 1, June 16, July 21, August 18, September 1, September 10, October 14, October 22, November 18, and January 5, Mr. Cox worked between 15-30 minutes overtime each week.  He was never paid overtime for any of these weeks. *See Id.*

The total of these overtime hours equals 81.5 hours.  At $8.50 per hour, Defendants failed to pay Mr. Cox $1039.13 in overtime compensation.

### C.  Based on Defendants' own records, Defendants failed to pay Mr. Cox at least $1,481.13.  With liquidated damages, this amounts to $2,962.26.

Accordingly, by adding the $1,039.13 in unpaid overtime with the $442 in unlawful deductions, Defendants failed to pay Mr. Cox at least $1,481.13.  As discussed *supra*, in wage cases, it is for the employer to come forth with evidence showing that it had a good faith belief that Mr. Cox was not entitled to overtime.  Considering that these numbers come from Defendants' own records, Defendants were clearly aware that Mr. Cox was working overtime, and simply chose to not pay him.  Accordingly, liquidate damages should be awarded, and it is therefore requested that, even if Sir Arbitrator believes Defendants' records, that he award $1,481.13 in actual damages and $1,481.13 in liquidated damages, totaling $2,962.26.

## IV. Conclusion

For the reasons stated above, Mr. Cox respectfully requests that Sir Arbitrator award damages based on his testimony, which is the only testimony in this case which is not fully of contradictions and irregularities.  Accordingly, he respectfully requests that Sir Arbitrator find

13

for him and award actual damages of $12,889 and liquidated damages of $12,889, totaling $25,778.

In the alternative, Mr. Cox respectfully that Sir Arbitrator at a minimum award actual damages based upon Defendants' own documents, totaling $1,481.13 and liquidated damages for $1,481.13, totaling $2,962.26

Further, based upon the applicable law (which is not cited herein because counsel agreed the law was clear that attorney's fees are mandatory), he further requests Sir Arbitrator award attorneys' fees as required to a prevailing plaintiff in an FLSA action.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

December 22, 2010

14

# EXHIBIT 5

| DATE | ATTORNEY | DESCRIPTION | TIME | RATE | FEES |
|---|---|---|---|---|---|
| 11/2/2009 | AFD | Initial draft of Answer, Tcw/ Client | 1 | 250 | 250 |
| 11/3/2009 | AFD | Research obtained corporate status | 0.1 | 250 | 25 |
| 11/3/2009 | AFD | Final draft of Answer, Tcw/ Client | 0.5 | 250 | 150 |
| 11/24/2009 | AFD | Final draft of Answer, Tcw/ Client | 0.3 | 250 | 75 |
| 11/25/2009 | AFD | Attendance at Federal Court | 1 | 250 | 250 |
| 1/3/2010 | AFD | telephone conversation with J Swidler, Esq. | 0.1 | 250 | 25 |
| 1/22/2010 | AFD | Meeting with client | 0.5 | 250 | 125 |
| 1/27/2010 | AFD | Meeting with client | .35 | | 8.75 |
| 2/1/2010 | AA | Research of CEPA waiver application to similar state claims | 1 | 150 | 150 |
| 2/9/2010 | AA | Drafting of letter to plaintiff's attorney regarding complaint | 0.5 | 150 | 75 |
| 3/12/2010 | AFD | Correspondence to Counsel re deposition of Cox,e-mail | 0.2 | 250 | 50 |
| 3/15/2010 | AFD | Telephone conversation with Ari Karph, Esq. re conference, depositions | 0.3 | 250 | 75 |
| 3/15/2010 | AFD | Conference call with Judge Schneider, Karph | 0.2 | 250 | 50 |
| 3/15/2010 | AFD | Correspondence to Client re depositions | 0.2 | 250 | 50 |
| 3/23/2010 | AFD | Telephone conversation with Counsel re extension and cancel deps | 0.1 | 250 | 25 |
| 5/18/2010 | AFD | Conference call with Judge Schneider, Swindler | 0.3 | 250 | 75 |
| 5/19/2010 | AFD | Review of e-mail(s) from James Langan canceling deposition of Cox., Tcw/ Client | 0.2 | 250 | 50 |
| 5/19/2010 | AFD | E-mail to paralegal Lagan canceling Deps as per his e-mail | 0.1 | 250 | 25 |
| 5/20/2010 | AFD | Telephone conversation with Swindler, Esq. | 0.1 | 250 | 25 |
| 5/20/2010 | AFD | Correspondence to Swindler re rescheduling depositions. | 0.2 | 250 | 50 |
| 6/2/2010 | AFD | Correspondence to Langan, e-mail re depositions. | 0.1 | 250 | 25 |
| 6/9/2010 | AFD | Telephone conversation with J Langan rec of e-mail re dep notices | 0.2 | 250 | 50 |
| 6/11/2010 | AFD | Attendance at deposition of Cox | 2 | 250 | 500 |
| 6/29/2010 | AFD | Correspondence to Swindler, Esq. w/ witness statement | 0.2 | 250 | 50 |
| 6/29/2010 | AFD | Telephone conversation with Justin Swindler, Esq. | 0.1 | 250 | 25 |
| 6/29/2010 | AFD | Attendance at deposition of Bin Le | 3 | 250 | 750 |
| 7/17/2010 | AFD | Correspondence to Client w/ dep transcript | 0.1 | 250 | 25 |
| 8/20/2010 | AFD | Meeting with client | 0.3 | 250 | 75 |
| 8/23/2010 | AFD | Attendance at deposition Julie LE | 1.5 | 250 | 375 |
| 8/25/2010 | AFD | Attendance at B Ngo deposition | 1.5 | 250 | 375 |
| 9/20/2010 | AFD | Correspondence to Client w/ Transcript | 0.1 | 250 | 25 |
| 10/7/2010 | AFD | Research regarding CEPA waiver of claims | 0.6 | 250 | 90 |
| 11/15/2010 | AA | Research Federal Arbitration procedures. | 0.5 | 150 | 75 |
| 12/21/2010 | AFD | Preparation of Mediation statement | 0.5 | 250 | 125 |
| 12/22/2010 | AA | Research FLSA and Memorandum of Law | 0.5 | 150 | 75 |
| 12/22/2010 | AFD | E-mail to Wendt re issues of law | 0.1 | 250 | 25 |

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/22/2010 | AFD | Conference withClients | 0.5 | 250 | 125 |
| 12/22/2010 | AFD | Conference call with Arbitrator, Swindler, Esq. | 0.1 | 250 | 25 |
| 12/23/2010 | AFD | Preparation of docs, review for Arbitration | 3 | 250 | 750 |
| 12/23/2010 | AFD | Attendance at Arbitration | 4.5 | 250 | 1125 |
| 2/8/2011 | AA | Review of correspondence from court | 0.1 | 150 | 15 |
| 2/18/2011 | AA | Review petition for attorney fees; research; call to District Court | 0.5 | 150 | 75 |
| 2/18/2011 | AFD | Correspondence to Swindler, Esq. w/ payment | 0.1 | 250 | 25 |
| 2/25/2011 | AA | Review Petition for attorney fees; review file; review billing; initial research | 2 | 150 | 300 |
| 3/2/2011 | AA | Research opposition to attorney fee petition | 1.5 | 150 | 225 |
| 3/4/2011 | AA | Drafting of opposition to petition for attorney fees; review file | 2 | 150 | 300 |
| | | **TOTAL** | | | 7238.75 |